## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## EL DORADO DIVISION

| | | |
|---|---|---|
| **Angel Enrique Ramos-Madrigal, Fabian Ramos-Madrigal, Luis Martinez-Garcia, Jose Guadalupe Quintana-Trujillo, Fidencio Martinez-Garcia, J. Concepcion Martinez-Garcia, Narciso Guillen-Madrigal, Jose Manuel Castillo-Guillen, Noe Martinez-Cervantes, Jorge Morfin-Torrez, Carlos Mario Diaz-Santana, Francisco Heredia-Cervantes, Esteban Zapien-Rodriguez, Vicente Apolinar Fernandez-Ruiz, Juventino Arrellano-Zapien, Jhovanni Hernandez-Riano, Evaristo Hernandez-Jose, Ramon Mosqueda-Vasquez, Fidencio Mosqueda-Castro, Feliciano Lazaro-Rufino, Salvador Arriaga-Hinojosa, Alejandro Mendoza-Garcia, Jose Roberto Granillo-Gonzalez, Jesus Madrigal-Munoz, Juan Sanchez-Villegas, Jesus Gaytan-Morfin, Guido Cesar Avila-Morfin, J. Jesus Madrigal-Perez, Efren Gaytan-Morfin, Juan Jose Ceballos-Zapien, Pablo Morfin-Ruiz, Alfredo Garcia-Cuevas, and Gilberto Jose-Lopez,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION NO. 1:10-cv-01078-RTD** |
| Plaintiffs, | ) ) | |
| **v.** | ) ) | |
| **Mendiola Forestry Service, LLC and Perfecto Mendiola,** | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1.      This is an action for damages brought by 33 individuals (the "Workers") from Mexico who were recruited by Mendiola Forestry, LLC ("Mendiola Forestry") and Mendiola Forestry owner Perfecto Mendiola to perform forestry work in the Southeast in 2008 and 2009 through the H-2B temporary worker program.

2.      Defendants lured the Workers to the Southeast to perform forestry work with promises of certain hourly wages and other terms of employment.  Once the Workers traveled to the Southeast, however, Defendants broke those promises.  Among other things, Defendants refused to pay the Workers an hourly wage, relying instead on a piece-rate payment system that resulted in the Workers earning far less than the wage they had been promised and even less than the minimum wage for long hours of backbreaking work.

3.      To ensure that the Workers did not leave their miserable working conditions, Defendants also refused to give the Workers their H-2B extension documents and threatened the Workers with serious immigration consequences if they were to leave the work.

4.      This action is based on violations of the Workers' rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1872 (hereinafter "AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (hereinafter "FLSA"), and the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 (hereinafter "TVPRA").

5.      The Workers seek money damages to redress these violations of law.

## JURISDICTION

6.      This Court has jurisdiction over the Workers' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce).

7. The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. § 1854(a), 29 U.S.C. § 216(b), and 18 U.S.C. § 1595(a).

8. This Court has personal jurisdiction over Defendants, and venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1854(a).

**PARTIES**

9. Each of Plaintiffs is a natural person who was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) in 2008.

10. At all times relevant to this action, the Workers were "migrant agricultural workers" within the meaning of 29 U.S.C. § 1802(8)(A).

11. Mendiola Forestry Services, LLC is a limited liability corporation organized under the laws of Arkansas with its principal place of business in Warren, Arkansas.

12. Perfecto Mendiola is a natural person residing in Warren, Arkansas.

13. At all times relevant to this action, each of Defendants Mendiola Forestry and Perfecto Mendiola was a "farm labor contractor" within the meaning of 29 U.S.C. § 1802.

14. At all times relevant to this action, the Workers were each an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e) and 29 C.F.R. § 500.20(h)(3).

15. At all times relevant to this action, Defendants were each Worker's "employer" within the meaning of 29 U.S.C. § 203(d) and 29 U.S.C. § 500.20(h)(2).

16. At all times relevant to this action, the Workers were "employed" by Defendants within the meaning of 29 U.S.C. § 203(g), 29 U.SC. § 1802(5), and 29 C.F.R. § 500.20(h)(1).

**STATEMENT OF FACTS**

17. The Workers are indigent and speak and read primarily Spanish.

18.     All of the actions and omissions alleged herein were undertaken by Defendants either directly or through their agents.

19.     The Workers entered the United States in 2008 on H-2B temporary visas to work for Down to Earth Landscaping ("Down to Earth") in New Jersey.

20.     In late 2008, Defendants contracted with International Personnel Resources ("IPR") to recruit the workers and paid IPR for performing those recruitment services.

21.     In 2008, Defendants, through their agents, obtained H-2B visa "extensions" allowing the Workers lawfully to perform work for Mendiola Forestry from December 2, 2008 to April 1, 2009.

22.     IPR told the Workers that they had to obtain H-2B extensions and perform work for Mendiola Forestry to obtain another H-2B visa to return to work for Down to Earth Landscaping in the spring of 2009.

23.     In late 2008, Defendants, directly and through their agent IPR, began recruiting the Workers to work for Mendiola Forestry.

24.     IPR, in turn, utilized Down to Earth to recruit and furnish some Workers to Mendiola Forestry.

25.     At the time that it recruited the Workers, Defendants failed to disclose adequately and accurately in writing all terms and conditions of employment as required by the AWPA.

26.     Defendants, through their agents IPR and Down to Earth, provided some of the Workers with short written statements regarding some terms and conditions of work, including a pay rate of between $8.50 and $12.50 per hour. These documents failed to mention a piece-rate pay scheme and did not state the specific place of employment, the period of employment, or

whether worker's compensation or unemployment insurance would be provided.

27.     Some of the Workers never received any written disclosures at all from Defendants.

28.     Both IPR and Down to Earth engaged in farm labor contracting activities on behalf of Defendants, as defined by 29 U.S.C. §1802(6).  Upon information and belief, at all times relevant to this action, IPR and Down to Earth did not have farm labor contractor certificates of registration issued by the U.S. Department of Labor (hereinafter "USDOL") authorizing them to perform farm labor contracting activities such as recruiting or furnishing agricultural workers.

29.     Defendants failed to take reasonable steps to determine whether IPR or Down to Earth had certificates of registration issued by USDOL that authorized the farm labor contracting activities for which Defendants utilized IPR and Down to Earth.

30.     Defendants offered, and the Workers accepted, agricultural employment in late 2008.

31.     Among other things, the working arrangement with Defendants called for the Workers to be away from their permanent places of residence and travel to the Southeast to work for Defendants.

32.     In early December 2008, Defendants caused the Workers to be transported from New Jersey to Georgia to begin work for Defendants, and the Workers began working for Defendants no earlier than December 11, 2008.

33.     In 2008 and 2009, the Workers engaged in "agricultural employment" for Defendants within the meaning of 29 U.S.C. § 1802(3), which consisted primarily of planting

pine saplings at various work sites in Georgia, Arkansas, Florida, and Texas.

34.     While working for Defendants, the Workers were engaged in the production of goods for commerce as that phrase is used in the FLSA in that the pine saplings planted by the Workers were purchased from different states and the mature seedlings were shipped in interstate commerce.

35.     Perfecto Mendiola directed, controlled, and supervised the work performed by the Workers by directly supervising the loading of pines and the planting of pines in the fields and by instructing other Mendiola Forestry employees how to direct, control, and supervise the Workers in performing the same tasks.

36.     Perfecto Mendiola had the power to hire or fire the Workers and to modify the conditions of the Workers' employment.  Perfecto Mendiola determined the days the Workers worked, the beginning and ending time of the work day, the location of the work, the Workers' pay rates (including applicable piece rates), and methods and time of payment of the Workers.

37.     Defendants rarely paid the Workers an hourly wage, as had been promised in New Jersey to the Workers during recruitment.  Instead, the Workers were paid on a piece rate of approximately $25-$27 per 1000 pines planted.

38.     This piece rate was not disclosed to the workers until after they arrived in Georgia.

39.     The Workers were entitled to earn not only the wages they had been promised, but the higher of the promised wage rate, the H-2B guaranteed prevailing wage, or, if applicable, the Service Contract Act wage rate.

40.     The Workers regularly loaded pine saplings onto trailers before traveling

substantial distances to the work sites, but were not compensated for any time spent loading the pines or for time spent traveling after loading the pines.

41.     Because the Workers performed labor for Defendants in various states, each time the work moved, the Workers were required by Defendants to travel during regular work hours to new temporary lodging located near the new work sites but were not compensated for this travel time.

42.     Defendants made numerous deductions from the Workers' wages but failed to explain the specific purpose of each sum withheld on the Workers' pay stubs.  Many of these deductions were unlawful.

43.     Defendants did not provide the Workers with itemized pay statements as required by the AWPA.  The mostly handwritten "pay stubs" that Defendants provided to the Workers did not include the basis on which the wages were paid, the number of piece-rate units earned, the number of hours worked, the dates worked, or an itemized explanation of all deductions being made from their total pay.

44.     Defendants did not pay the Workers their wages owed when due, often explaining that they could not pay the Workers because Defendants themselves had not yet been paid.

45.     The Workers were not paid for every pine planted or for every hour worked.

46.     Due to Defendants' piece-rate payment scheme, failure to compensate the Workers for all hours worked, failure to maintain adequate records, and illegal deductions from the Workers' pay, Defendants did not pay the Workers the federal minimum wage for each hour worked by the Workers in each discreet workweek.

47.     Due to Defendants' piece-rate payment scheme, failure to compensate the

Workers for all hours worked, failure to maintain adequate records, and illegal deductions from the Workers' pay, Defendants did not pay the Workers the wage rate to which they were entitled under the working arrangement.

48.     The Workers often worked in excess of 40 hours in a given workweek.

49.     Defendants did not pay overtime to the Workers for any hours they worked in excess of 40 in a given workweek.

50.     Defendants had been investigated and fined by the USDOL for similar violations of the AWPA and FLSA in 2006.

51.     The Workers at all times complied with the terms of the working arrangements.

52.     Defendants violated without justification the working arrangements with the Workers by not complying with all the terms and conditions of employment, including failure to pay the promised wage rate.

53.     The Workers complained about the piece-rate pay scheme, pointing out that it was not what they had been promised in New Jersey, and repeatedly asked Defendants to provide them with the H-2B extension documents that Defendants had promised to secure for them.

54.     To ensure the Workers did not leave their employment with Defendants, Perfecto Mendiola told the Workers that he had the H-2B extensions but would not provide the H-2B visa extension documents to the Workers until the end of the contract, and he threatened the Workers with serious immigration consequences if they were to leave the work prior to the end of their contract.

55.     Perfecto Mendiola also told some of the Workers that if they did not like the piece-rate pay scheme, they could leave, but he would ensure that they did not receive their H-

2B extension and would report them to immigration.

56.     Defendants failed to post in a conspicuous place a notice in the Workers' language at the Workers' place of employment setting forth their rights under the AWPA.

57.     The Workers were transported by Mendiola Forestry employees from their housing to the work sites.

58.     One Mendiola Forestry employee who transported the workers did not have a Farm Labor Contractor Employee certificate of registration.

59.     During the course of their employment, Defendants provided housing to the Workers.

60.     Defendants failed to post or present to the Workers a statement of the terms and conditions of occupancy of the housing that Defendants provided to the Workers.

61.     At all times relevant to this action, Defendants were not authorized by USDOL authorizing to house migrant agricultural workers nor did they notify USDOL whenever they intended to use or cause to be used a real property or facility to house the Workers.

### FIRST CAUSE OF ACTION: MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT

62.     Defendants intentionally violated the Workers' rights under the AWPA by:

a.      Hiring, employing, or using an unregistered farm labor contractor or farm labor contractor employee to recruit and transport the Workers, 29 U.S.C. § 1811(b);

b.      Using a farm labor contractor without taking reasonable steps to determine that the farm labor contractor possessed a valid certificate of registration authorizing the activity for which the contractor was utilized, 29 U.S.C. §

1842;

c.    Failing to amend their certificates of registration whenever they intended to use or cause to be used a real property or housing facility to house migrant agricultural workers other than the one covered by their Farm Labor Contractor certificates, 29 U.S.C. § 1815(2)(b);

d.    Failing to provide required written disclosures at the time of the Workers' recruitment, 29 U.S.C. § 1821(a);

e.    Failing to post a notice at the place of employment setting forth the Workers' rights under the AWPA, 29 U.S.C. § 1821(b);

f.    Failing to provide and post all disclosures required by 29 U.S.C. § 1821 (a)-(c) in the Workers' language, 29 U.S.C. § 1821(g);

g.    Failing to provide each Worker with an itemized pay statement as required by the AWPA, 29 U.S.C. § 1821(d)(2);

h.    Failing to pay wages owed when due, 29 U.S.C. § 1822(a);

i.    Violating the terms of the working arrangement without justification, 29 U.S.C. § 1822(c); and

j.    Intimidating, threatening, restraining, and discriminating against the Workers for exercising their rights and protections under the AWPA, 29 U.S.C. § 1855.

63.    For each such violation of the AWPA, the Workers are entitled to recover their actual damages or up to $500 in statutory damages.

**SECOND CAUSE OF ACTION: FAIR LABOR STANDARDS ACT**

64.     Defendants failed to pay the Workers the minimum wage for each hour worked in a workweek, in violation of 29 U.S.C. § 206.

65.     Defendants failed to pay the Workers overtime for their labor in excess of 40 hours in each workweek, in violation of 29 U.S.C. § 207.

66.     As a consequence of Defendants violations of their rights under the FLSA, the Workers are entitled to their unpaid minimum wages and overtime, plus an additional equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b) and their reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION:  TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

67.     Defendants knowingly concealed or possessed the Workers' actual or purported immigration documents, i.e. the Workers' visa extension documents, in the course of, or with the intent to violate, Section 1589 or Section 1590 of the TVPRA.

68.     Defendants therefore violated the TVPRA provision prohibiting unlawful conduct with respect to documents, 18 U.S.C. § 1592.

69.     The Workers are entitled to compensatory and punitive damages, as well as attorney's fees, for this violation, pursuant to 18 U.S.C. § 1595.

### PRAYER FOR RELIEF

WHEREFORE, the Workers request that the Court grant them the following relief:

a.      Enter a judgment in favor of the Workers on their AWPA claims as set forth in their First Cause of Action;

b.      Award the Workers their actual damages or, alternatively, statutory damages of $500 per person per violation for Defendants' violations of the AWPA;

c.    Enter a judgment in favor of the Workers on their FLSA claims as set forth in

their Second Cause of Action;

d.    Award the Workers their unpaid wages, plus an equal amount as liquidated

damages;

e.    Enter a judgment in favor of the Workers on their TVPRA claim as set forth in

their Third Cause of Action;

f.    Award the Workers compensatory and punitive damages pursuant to the TVPRA;

g.    Award the Workers prejudgment and post judgment interest as allowed by law;

h.    Award the Workers their attorney's fees, reasonable expenses, and costs of court;

and

i.    Award the Workers such other relief as this Court deems just and proper.

Respectfully submitted,

**/s/Stacie Jonas**_____
Stacie Jonas
*Admitted Pro Hac Vice*
Tennessee Bar No. 027334
Douglas L. Stevick
Tennessee Bar No. 021711
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Suite 135
Nashville, TN 37217
Telephone: (615) 750-1200
Facsimile: (615) 366-3349

ATTORNEYS FOR PLAINTIFFS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 1st day of April, 2011, I electronically filed this document with the Clerk of Court using the ECF system, which sent notice of such filing to the attorney of record for Defendants.

 **/s/ Stacie Jonas**
Stacie Jonas