UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| Angel Enrique Ramos-Madrigal et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:10-cv-01078-RTD |
| ) | |
| Mendiola Forestry Service, LLC and ) | |
| Perfecto Mendiola, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs file this response to Defendants' motion to dismiss Plaintiffs' claim for unlawful conduct with regard to documents brought pursuant to Section 1592 and Section 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). 18 U.S.C. §§ 1592, 1595. Defendants misapprehend and misconstrue the legal and factual basis for Plaintiffs' claim, and Defendants' argument that Plaintiffs have failed to state a claim under the TVPRA is therefore unfounded. Plaintiffs have sufficiently alleged that Defendants possessed their immigration documents in the course of a violation of, or with the intent to violate, the forced labor and trafficking provisions of the TVPRA.

**I.   Legal Standard**

In *Iqbal* and *Twombly*, the Supreme Court held that in order to survive a motion to dismiss, a plaintiff's claim must be "plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint requires nothing more than a "short and plain" statement, FED. R. CIV. P. 8(a)(2), that "give[s] the

1

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted); *accord Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). A complaint meets this test if it tells a coherent story and "suggest[s]" the required elements of the plaintiff's claim – which is all that it takes legally for a complaint to be, in *Twombly*'s phrase, "plausible." *Twombly*, 550 U.S. at 556; *Phillips*, 515 F. 3d at 234. As is clear from the Supreme Court's decisions, plausibility is a lenient standard and does *not* depend on any showing of probable or likely success: to the contrary, a claim may proceed even if actual proof is "improbable" and ultimate recovery "very remote and unlikely." *Twombly*, 550 U.S. at 556; *accord Iqbal*, 129 S. Ct. at 1949; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Twombly*, 550 U.S. at 556).

In ruling on a motion to dismiss, the Court must accept the facts alleged in the complaint as true and view them in the light most favorable to Plaintiffs. *See Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715–16 (8th Cir. 2011). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden,* 588 F.3d at 594. "The court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002) (internal quotation and citation omitted).

## II. Statement of Relevant Facts

Accepting the facts alleged as true and viewing those facts in the light most favorable to Plaintiffs, Plaintiffs allege the following in their First Amended Complaint. Plaintiffs are indigent workers who speak primarily Spanish and who entered the United States lawfully on H-2B temporary visas to work for Down to Earth Landscaping in New Jersey. Pls.' First Am.

2

Compl. ¶¶ 17, 19.  Defendants Perfecto Mendiola and Mendiola Forestry subsequently contracted International Personnel Resources ("IPR") to recruit Plaintiffs to come to the Southeast to perform forestry work on H-2B visa extensions.  *Id*. ¶¶ 20, 23.  IPR told Plaintiffs that they had to work for Defendants on H-2B visa extensions in the winter of 2008-2009 in order to obtain another H-2B visa extension to work for Down to Earth Landscaping in the spring of 2009.  *Id*. ¶ 22.

After Plaintiffs traveled to the Southeast in mid- December 2008 to work for Defendants in reliance on the representations made by Defendants in New Jersey, Defendants refused to pay Plaintiffs the wage they had promised or the wage guaranteed by the H-2B program.  *Id*. ¶¶ 2, 32, 37–39.  Defendants instead paid Plaintiffs using a piece-rate system that resulted in the workers making far less than the wage guaranteed by the H-2B program and even less than the federal minimum wage.  *Id*. ¶¶ 2, 37, 39, 46.  Defendants also failed to explain adequately the purpose of deductions made from Plaintiffs' checks and failed to pay Plaintiffs for every pine that they planted or for every hour that they worked.  *Id*. ¶¶ 40, 42, 45.  Defendants knew that Plaintiffs were deeply dissatisfied with the pay scheme because Plaintiffs complained that it was not what they were promised in New Jersey.  *Id*. ¶ 53.

After arriving in the Southeast and discovering they would not be paid as promised, Plaintiffs repeatedly asked Defendants to give them their H-2B extension documents.  *Id*. ¶¶ 3, 53.  Perfecto Mendiola refused to do so.  *Id*.  Perfecto Mendiola told Plaintiffs that he had their H-2B extension documents but would not give them to Plaintiffs until the end of their employment contract to ensure that Plaintiffs did not leave employment.  *Id.* ¶ 54.  He also threatened Plaintiffs with serious immigration consequences if they were to leave the work prior

to the end of their contract.[1]  *Id*. ¶ 3, 54.  Perfecto Mendiola told Plaintiffs that if they did not like the unlawful pay scheme under which he compensated them, they could leave, but that if they did, he would ensure that they did not receive their H-2B extensions and would report them to immigration.[2] *Id*. ¶ 55.

### III. Plaintiffs State a Claim for Unlawful Conduct with Regard to Documents Under Section 1592 of the TVPRA

Defendants state that Plaintiffs "presumably" invoke 18 U.S.C. § 1589 (a)(3) as the basis of their claim under the TVPRA.  Dkt. No. 12-1, at 8.  In fact, in their Third Cause of Action, Plaintiffs explicitly set forth a claim under 18 U.S.C. § 1592, which penalizes unlawful conduct with regard to documents.[3]  *See* Pls.' First Am. Compl. §§ 67–69.  Specifically, Plaintiffs allege that Defendants knowingly possessed each Plaintiff's actual or purported immigration document (an H-2B extension document)[4] in the course of a violation of, or with intent to violate, section 1589 or 1590 of the TVPRA.  Plaintiffs have pleaded sufficient facts to support each element of this claim.

#### A. Defendants' Possession of Plaintiffs' H-2B Extension Documents Is Within the Scope of Section 1592

Section 1592(a) of the TVPRA makes it unlawful, under certain conditions, to "knowingly . . . conceal[] . . . or possess[] any actual or purported passport or other immigration

---

[1] Defendants conveniently twist this allegation to mean that Defendants simply informed Plaintiffs of Defendants' supposed obligation under the H-2B regulations to notify USCIS if an H-2B worker leaves employment.  *See* Dkt. No. 12-1, at 11.  This interpretation hardly construes the alleged facts in the light most favorable to Plaintiffs.  Furthermore, as discussed below in Part III.B, Plaintiffs are aware of nothing in the H-2B regulations that obliged Defendants in the relevant time period to make such reports or any other serious immigration threats.

[2] Defendants misinterpret this allegation to mean that Plaintiffs "freely admit that 'they could leave' at any time if they were unsatisfied with the working arrangement."  Dkt. No. 12-1, at 9.  This interpretation is unsustainable, but even if it were not, Defendants' spin reflects yet another attempt to construe the alleged facts in the light most favorable to Defendants.

[3] Section 1595 of the TVPRA provides for a private right of action under Section 1592.  *See* 18 U.S.C. § 1595.

[4] Defendants correctly note that this "H-2B extension document" is set forth on a Form I-797A.

4

document, or any other actual or purported government identification document, of another person." Defendants' argument that H-2B visa extension documents "do not fall within the scope of documents" described in this provision, *see* Dkt. No. 12-1, at 9, is false.

As Defendants note, an employer must file an I-129 form petitioning for a worker to receive an H-2B visa extension. AUSTIN T. FRAGOMEN, JR. ET AL., IMMIGRATION PROCEDURES HANDBOOK § 7.39 (April 2011) (attached as Ex. C, at 3). When the employer's petition is granted, the employer, known as the "petitioner," receives an I-797A Notice of Action Form. *Id.* §§ 7.36 (Ex. B, at 2), 7.39 (Ex. C, at 3). This notice approving the request for the extension is initially sent to the employer, but the employer is not entitled to retain the entire document. Instead, the employer "should tear off the lower portion of the form and give it to the beneficiary," i.e. the worker.[5] *Id.* § 7.36 (Ex. B, at 2).

The lower portion of the Form I-797A is an immigration document that falls within the scope of Section 1592: "The lower portion of Form I-797A contains a new Form I-94 which should be stapled to the original I-94 issued to the alien upon his or her admission." FRAGOMEN ET AL., *supra*, § 7.36 (Ex. B, at 2); *see also id.* § 7.39 (Ex. C, at 5). A Form I-94 sets forth the date through which a nonimmigrant visitor such as an H-2B worker is lawfully allowed to

---

[5] The upper portion of the form informs the employer in no uncertain terms:

> The petitioner should keep the upper portion of this notice. ***The lower portion should be given to the worker.*** He or she should keep the right part with his or her Form I-94, Arrival-Departure Record. This should be turned in with the I-94 when departing the U.S. The left part is for his or her records. A person granted an extension of stay who leaves the U.S. must normally obtain a new visa before returning. The left part can be used in applying for the new visa. If a visa is not required, he or she should present it, along with any other required documentation, when applying for reentry in this new classification at a port of entry or pre-flight inspection station.

I-797A Notice of Action (emphasis added). The I-797A Notice is embraced by Plaintiffs' First Amended Complaint. *See In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d at 889. Plaintiffs ask the Court's permission to amend their Complaint to include this language, among other things, if the Court finds that Plaintiffs have failed to state a claim for relief in their First Amended Complaint. *See* Part IV, *infra*.

5

remain in the country.[6] *See, e.g.*, U.S. Department of State, *What the Visa Expiration Date Means*, *at* http://travel.state.gov/visa/temp/info/info_1298.html ("The date . . . shown on your Arrival-Departure Record, I-94 or I-94W is the official record of your authorized length of stay in the U.S."). The worker must turn in the I-94 when he departs the United States. *See* U.S. Department of State, Lost and Stolen Passports, Visas, and Arrival-Departure Records (Form I-94), *at* http://travel.state.gov/visa/temp/info/info_2009.html ("Arrival-Departure Records (Form I-94 and I-94W) are official travel documents that foreign citizens coming to the United States (U.S.) must have in their possession to show their country of citizenship and legal status in the U.S. . . . . Your I-94 is needed as you depart the U.S., to document that you are departing by the required date."); U.S. Customs and Border Patrol, Filling Out Arrival-Departure Record, CBP Form I-94, for Nonimmigrant Visitors with a Visa for the U.S., *available at* http://www.cbp.gov/xp/cgov/travel/id_visa/i-94_instructions/filling_out_i94.xml (noting that all non-immigrant visitors to the United States must fill out a I-94 form upon entering the country and must turn the I-94 form back in upon exiting the country, and stating that the form I-94 "is to be in the applicant's possession at all times until the applicant departs the United States").

Furthermore, the worker can use the lower portion of the Form I-797A to leave and re-enter the country during his authorized period of employment or to apply for a new visa. *See* 8 C.F.R. § 214.2(h)(18) (noting that the worker may present the document "to facilitate entry into the United States" or "to apply for a new or revalidated visa"); FRAGOMEN ET AL., *supra*, §§ 7.36 (Ex. B, at 2), 7.39 (Ex. C, at 5) (noting that the lower portion of the Form I-797A "also has another part which contains information on the [H-2B extension] approval; this part of the

---

[6] The worker is required by federal law to carry a valid I-94 document on his person at all times, and failure to do so may result in imprisonment and criminal fines. *See* 8 U.S.C. § 1304(e) (penalizing an alien's failure to carry at all times an alien registration form with criminal fines and imprisonment); 8 C.F.R. § 264.1(a) (listing an I-94 Arrival/Departure form as registration form for non-immigrants).

approval notice may be used to renew the alien's visa."). The lower portion of the Form I-797A is also the only documentation a worker could present to demonstrate he is lawfully employed pursuant to an H-2B extension in the case of an inspection. *See* 73 Fed Reg. 78104, 78115 (noting that "[i]f an employee is approved and does work for another U.S. employer, he or she should be able to present such documentation to DHS in case of an inspection.").

Defendants incorrectly suggest that an employer does not violate Section 1592 unless the employer withholds the worker's passport. *See* Dkt. No. 12-1, at 10. The clear language of Section 1592(a), which refers to "any actual or purported passport or other immigration document," belies that argument.[7]

In sum, the H-2B extension documents possessed by Defendants constituted an "immigration document" that falls within the scope of Section 1592, and, as discussed below, Plaintiffs have sufficiently pleaded that Defendants' possession of those immigration documents was in the course of, or with the intent to violate, the forced labor and trafficking provisions of the TVPRA.

### B. Plaintiffs Sufficiently Allege that Defendants Possessed Their Immigration Documents in the Course of, or with the Intent to Violate Sections 1589 and 1590 of the TVPRA

In support of their claim of unlawful conduct with regard to documents, Plaintiffs allege that Defendants withheld their immigration documents in the course of a violation of, or with the intent to violate, Section 1589 of the TVPRA.[8] Section 1589, which prohibits forced labor,

---

[7] Defendants cite to *U.S. v. Farrell*, 563 F.3d 364 (8th Cir. 2009) in support of this proposition. While the employer in *Farrell* did happen to confiscate his employees' passports, nothing in the opinion suggests that a passport is the only immigration document that falls within the prohibitions of Section 1592.

[8] Plaintiffs' also allege that Defendants withheld their H-2B extension documents in the course of, or with the intent to violate, Section 1590 of the TVPRA. This allegation turns on almost identical facts and law as Plaintiffs' allegation that Defendants withheld the documents in violation of Section 1589. Section 1590 makes it unlawful to knowingly recruit, harbor, transport, provide, or obtain by any

7

makes it unlawful to:

> [K]nowingly provide[] or obtain[] the labor or services of a person by any one of, or by any combination of, the following means—
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

Plaintiffs' allegations are sufficient to state a violation of, or an intention to violate, this provision. Namely, Plaintiffs sufficiently allege that Defendants intended to or did obtain their labor through threats of serious harm, threatened abuse of law or legal process, and a scheme or plan intended to cause Plaintiffs to believe that, if they did not perform work for Defendants, they would suffer serious harm.

### 1. Plaintiffs Sufficiently Allege That Defendants Threatened Them With Abuse of the Law or Legal Process

As Defendants recognize, *see* Dkt. No. 12-1, at 3, an H-2B visa authorizes an individual to work only for the employer who has petitioned for him, and an H-2B worker is generally required to leave the United States at the end of the authorized period of stay if the worker has not been granted any other form of continued lawful status by U.S. immigration authorities.[9] Notably, an H-2B worker has ten days after separation from employment to depart the country;

---

means, any person for labor or services in violation of any section of the TVPRA, including the prohibitions against forced labor and unlawful conduct with regard to documents. 18 U.S.C. § 1590.

[9] A worker's initial H-2B visa includes only the name of his original petitioning employer—in this case, Down to Earth Landscaping, *see* Pls.' First Am. Compl. ¶ 19—and the dates during which the worker is authorized to work for that employer. The initial H-2B visa does not include the dates for which the worker is subsequently authorized to work for a different employer on an H-2B visa extension. *See* 8 C.F.R. § 214.2(h)(13)(i)(A), (15)(i), (15)(ii)(C); 20 C.F.R. § 655.34(a).

8

the worker is lawfully present in the country during those ten days.[10]  *See* 8 C.F.R. § 214.2(H)(13); 20 C.F.R. § 655.35(a).

Defendants argue that they were required by law to report Plaintiffs to the United States Immigration and Customs Service ("USCIS") if Plaintiffs left their employment, *see* Dkt. No. 12-1, at 5, and suggest that Defendants had lawful authority to restrict Plaintiffs' movement, *see* Dkt. No. 12-1, at 10.[11]  This argument is spurious.  First of all, it mischaracterizes Plaintiffs' allegation that Defendants threatened them with serious immigration consequences if they were to leave, conveniently construing the allegation in the light most favorable to Defendants.  Furthermore, even if Defendants' characterization of Plaintiffs' allegation were accurate, nothing in the former or current H-2B regulations requires or allows an employer to threaten H-2B workers with serious immigration consequences to prevent the worker from leaving employment.

Plaintiffs are aware of nothing in the H-2B regulations that required employers to report workers who abandoned their employment to USCIS during much of the time that Plaintiffs were employed by Defendants.[12]  *See* 20 C.F.R. §§ 655.1–.4 (effective until Jan. 18, 2009) (attached as Ex. A); *compare* 8 C.F.R. § 214.2(h)(5)(vi)(A) (effective until Jan. 18, 2009) (establishing reporting requirement for H-2A employers) *with* 8 C.F.R. § 214.2(h)(6) (effective

---

[10] It is therefore false and misleading for an employer to suggest that, pursuant to the H-2B program rules, a worker faces arrest or deportation simply because he leaves work before the end of the contract period.

[11] Defendants seek to conflate the H-2B program prohibition against workers changing employers with an H-2B employer's supposed lawful authority to restrict the workers' liberty to move or travel, concluding that this is "the very nature of the H-2B program."  Dkt. No. 12-1, at 10.  An H-2B employer, however, has no legal right to restrict an H-2B worker's right to move or travel.  Such a mistaken perception makes it no wonder that a recent report on the H-2 program was entitled "Close to Slavery." *See* Close to Slavery: Guestworker Programs in the United States (Southern Poverty Law Center 2007), *available at* http://www.splcenter.org/sites/default/files/downloads/Close_to_Slavery.pdf.

[12] Plaintiffs allege that they began employment with Defendants after December 11, 2008.  Pls. First Am. Compl. ¶ 32.

until Jan. 18, 2009) (setting forth regulations governing H-2B program and omitting any reporting requirement). The provision cited by Defendants, 20 C.F.R. § 655.22(f), did not go into effect until January 18, 2009, 73 Fed. Reg. 78020, 78020, and the Department of Labor further clarified that the rule would be phased in and would not apply to employers listing an employment start date prior to October 2009, 73 Fed. Reg. 78020, 78023.[13] Department of Homeland Security regulations established a similar reporting requirement at 8 C.F.R. § 214.2(h)(6)(i)(F), but this regulation likewise was not effective until January 18, 2009. *See* 73 Fed. Reg. 78104, 78104. Thus, for at least the first month that Plaintiffs were employed by Defendants, there was no regulatory requirement that Defendants report Plaintiffs' departure to USCIS and Defendants could not, therefore, have relied on this purported requirement when making serious immigration threats to Plaintiffs during this time.

Finally, even if an employer were to threaten workers by informing them of some alleged obligation to report a workers' departure to USCIS, such a statement still constitutes "threatened abuse of the legal process" when the employer threatens to use the reporting requirement "in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *See* 18 U.S.C. § 1589(a)(3), (c)(1); *see also United States v. Calimlim*, 538 F.3d 706, 712 (7th Cir. 2008) (upholding Section 1589 against a constitutional challenge and finding, *inter alia*, that the scienter requirement prevents Section 1589 from punishing innocent employers who merely wish to inform their workers of valid immigration consequences); *Ramos v. Hoyle*, No. 08-21809, 2008 U.S. Dist. LEXIS 102677, at *10–*11 (S.D. Fla. Dec. 19, 2008) (holding that defendants' threats that plaintiffs would lose immigration status if they left employment

---

[13] Plaintiffs allege that the start date authorized by the relevant H-2B extension was December 2, 2008. Pls. First Am. Compl. ¶ 21.

10

constituted threatened abuse of the legal process because of defendants' objectives and despite defendant's argument that the statement was truthful).  Indeed, several courts, including those cited in Defendants' motion, have found that threats of serious immigration consequences constitute threatened abuse of law or the legal process under the TVPRA where those threats are made for an improper purpose.  *See*, *e.g.*, *Velez v. Sanchez*, No. No. 04-CV-4797, 2010 U.S. Dist. LEXIS 126586, at *24  (E.D.N.Y. Nov. 30, 2010) (acknowledging that "using the threat of removal proceedings to obtain some sway over an illegal immigrant" could constitute abuse of the legal process); *Ramos*, 2008 U.S. Dist. LEXIS 102677, at *10–*11 (finding that plaintiffs had stated a claim for forced labor under § 1589 where defendants threatened that plaintiffs would lose their immigration status if they left employment); *United States v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *23 (W.D.N.Y. Dec. 2, 2003) (finding that threats of deportation constituted threatened abuse of the legal process under Section 1589 "since the alleged objective for same was to intimidate and coerce the workers into 'forced labor'"); *Catalan v. Vermillion Ranch Limited Partnership*, No. 06-cv-01043-WYD-MJW, 2007 U.S. Dist. LEXIS 567, at *23–*24 (D. Colo. Jan. 4, 2007) (finding that defendant's threat to have workers deported if they left employment was sufficient to support a claim under § 1589(a)(3) and §1590).

Plaintiffs allege that Defendants' purpose in threatening them with serious immigration consequences was to ensure that they did not leave employment before the end of their contract. *See* Pls.' First Am. Compl. ¶ 54.  That Defendants made these threats following Plaintiffs' complaints regarding their miserable pay and Plaintiffs' requests for their extension documents further evinces Defendants' intent to use the threats to prevent Plaintiffs from leaving employment.  The preamble to the H-2B regulations clearly puts employers on notice that "the

reporting requirement is not . . . intended to be used by employers as a threat against their alien workers to keep them in an abusive work situation." 73 Fed. Reg. 78104, 78116 (noting that an employer would be subject to having H-2B petition revoked if it engaged in such "worker intimidation."). Thus, even if Defendants purport to have made the alleged immigration threats pursuant the H-2B regulations, Plaintiffs sufficiently have pleaded that Defendants used the regulations in a manner and for a purpose for which the law was not designed.

Plaintiffs allegations that Defendants possessed their immigration documents in the course of a violation of, or with the intent to, obtain their labor through threatened abuse of law or the legal process—particularly when read in combination with the allegations outlined below—therefore state a claim for relief.

### 2. Plaintiffs Sufficiently Plead That Defendants' Actions Constituted Threats of Serious Harm and a Scheme or Plan Intended to Cause Plaintiffs to Believe That They Would Suffer Serious Harm if They Did Not Perform Labor for Defendants

In addition to alleging threatened abuse of law or the legal process, Plaintiffs also sufficiently allege that Defendants obtained or intended to obtain their labor through threats of serious harm and a scheme or plan intended to cause Plaintiffs to believe that they would suffer serious harm if they did not labor for Defendants, *see* 18 U.S.C. § 1589(a)(2), (4), subsections of the forced labor provision that Defendants' motion ignores entirely.[14] *See* Dkt. No. 12-1, at 8–12.

The term serious harm is defined as:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

---

[14] Section 1589 makes it unlawful to obtain the labor of a person through "any one of, or by any combination of" these means. 18 U.S.C. § 1589(a).

12

18 U.S.C. § 1589(c)(2).

    Plaintiffs allege that Defendants refused to give them their H-2B extension documents and threatened them with serious immigration consequences and the loss of their extensions if they were to leave. Defendants' unlawful pay scheme also resulted in Plaintiffs earning very little money, rendering Plaintiffs, indigent migrant workers, even more desperate to maintain their ability to obtain future H-2B visas.

    Defendants' threats were amplified by Defendants' refusal to give Plaintiffs their immigration documents. Defendants' refusal to provide Plaintiffs their new I-94 form prevented Plaintiffs from complying with their obligation to carry this document at all times once Plaintiffs' original H-2B documents expired. *See* 8 U.S.C. § 1304(e); 8 C.F.R. § 264.1(a). Plaintiffs' inability to present this document reflecting their lawful presence were they to encounter law enforcement rendered them vulnerable to criminal fines and imprisonment as well as a range of adverse immigration law enforcement actions.[15] Such enforcement actions could result in both a loss of liberty in the short run and serious immigration penalties in the long run.[16]

    Under the circumstances, and in light of Defendants' refusal to give them their H-2B extension documents, Plaintiffs' allegations that Defendants threatened that they would suffer serious immigration consequences if they left employment and that Plaintiffs would lose their extensions altogether, potentially preventing them from returning to work the next year with

---

[15] Immigration law enforcement officials are authorized to interrogate all aliens and persons believed to be aliens regarding the right of those presumptive aliens to be or remain in the United States, and, under certain circumstances, are also authorized to detain, without a warrant, any person whom those officials believe to be in violation of any law regulating the admission, exclusion, expulsion, or removal of aliens. 8 U.S.C. § 1357(a). An alien's inability to present a valid I-94 card could give rise to an inference that the alien is present in the U.S. in violation of immigration laws.

[16] For example, were a worker to be removed because he was unable to demonstrate his lawful presence, the worker would be unable to return lawfully to the United States for at least ten years. *See* 8 U.S.C. § 1182(a)(9)(A).

13

their previous employer in New Jersey, adequately support a claim that Defendants threatened Plaintiffs with harm sufficiently serious to compel a reasonable poor migrant worker whose livelihood depends on his ability to obtain H-2B visas to continue laboring for Defendants to avoid that harm.  Plaintiffs have, therefore, sufficiently alleged that Defendants obtained their labor or intended to obtain their labor through threats of serious harm and a scheme or plan intended to cause Plaintiffs to believe that they would suffer serious harm if they did not perform labor for Defendants.

### IV.     Leave to Amend Complaint

If the Court finds that Plaintiffs have not set forth sufficient facts to support a claim for unlawful conduct with regard to documents, Plaintiffs respectfully request that the Court grant them leave to file a Second Amended Complaint further clarifying their allegations.  *See* FED. R. CIV. P. 15(a) (leave to amend a complaint "shall be freely given when justice so requires"); *Becker v. University of Nebraska*, 191 F.3d 904, 907–08 (8th Cir. 1999) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)) ("Unless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.'").

### V.     Conclusion

Plaintiffs have sufficiently set forth a plausible claim for unlawful conduct with regard to documents under Section 1592 of the TVPRA.  Defendants' motion to dismiss should, therefore, be denied.  Were the Court to find that Plaintiffs have not set forth sufficient facts in support of this claim, Plaintiffs respectfully ask the Court for leave to file a Second Amended Complaint.

         Respectfully submitted,

         **/s/Stacie Jonas**

        Stacie Jonas
*Admitted Pro Hac Vice*
Tennessee Bar No. 027334
Douglas L. Stevick
Tennessee Bar No. 021711
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Suite 135
Nashville, TN 37217
Telephone: (615) 750-1200
Facsimile: (615) 366-3349

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

      I hereby certify that on this the 2nd day of May, 2011, I electronically filed this document with the Clerk of Court using the ECF system, which sent notice of such filing to the attorney of record for Defendants.

                                                         **/s/ Stacie Jonas**
                                                         Stacie Jonas